

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| THE STATE OF TEXAS, | § | |
| | | No. 08-13-00164-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 171st District Court |
| VICENTE MUNOZ, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20120D03021) |

**O P I N I O N**

Vicente Munoz was charged by indictment of Felony driving while intoxicated.  The State of Texas appeals the trial court's order granting Vicente Munoz's motion to suppress his blood test result that was obtained as a result of his arrest for DWI.  The trial court's findings of fact and conclusions of law reflect the sole basis for suppression of the blood test result was the State's failure to show exigent circumstances to support the warrantless, non-consensual blood draw.  Finding the State failed to establish a valid exception to the warrant requirement, we affirm the trial court's suppression order.

**FACTUAL SUMMARY**

On September 5, 2009, about 8:17 p.m., El Paso Police Officer Jordan was on patrol when she was dispatched to a call involving a suspicious vehicle.  The reporter had observed a red pickup truck sitting in the street, with the engine off and the headlights on.  Officer Jordan

arrived at approximately 8:20 p.m. and spoke with the reporter. Officer Jordan approached the truck on the driver's side. The officer discovered Munoz asleep in the front seat with a can of beer between his legs, the keys in the ignition, the engine off, and the headlights on. Officer Jordan woke Munoz up and smelled a strong odor of an alcoholic beverage. When Munoz exited the truck, the officer observed him to have an unsteady balance, red blood-shot eyes, and exhibit slurred speech. Munoz refused to submit to a breath test. Munoz was transported to the station at 9:13 p.m. The station is about five to six blocks away and it takes a couple of minutes from Munoz's vehicle to arrive there.

On the way to the station, Officer Jordan passed the Municipal Court building which houses a magistrate on duty from 9:00 p.m. to 8:00 a.m. every night. Officer Jordan stated that to get a warrant, she would have to go before the magistrate, "get it signed and get the warrant." She acknowledged she did not attempt to get a warrant nor was she prevented from getting one. Officer Jordan testified that she was aware that she could have obtained a warrant had she wanted. Officer Jordan explained to the court that she did not get a warrant because at that time the law allowed a mandatory blood draw if an individual had two prior convictions. She stated the only reason she failed to obtain the warrant was because she relied on the mandatory blood draw statute.

After Munoz was placed in custody, it was determined he had seven prior convictions for DWI. Based on Munoz's prior convictions, he was immediately taken to the hospital for a mandatory blood draw.

## PROCEDURAL BACKGROUND

On December 14, 2012, the trial court, after a hearing on a motion to suppress statements, evidence, and the blood test result, orally denied the motion. On May 2, 2013, Munoz filed a

second motion to suppress the blood test result relying on *Missouri v. McNeely*, ___ U.S. ___, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). On May 6, 2013, the trial court heard argument of counsel regarding Munoz's second motion to suppress and denied it again. On the day of Munoz's jury trial, May 14, 2013, the trial court heard additional testimony from Officer Jordan and suppressed the blood test result.[1] Munoz argued that no exigent circumstances were shown and a warrantless blood draw could not be permitted under *McNeely*. The State argued *McNeely* did not apply in states which had legislatively-mandated blood draws for repeat offenders such as Texas. Next, the State contended the blood test result should not be excluded because the officers were acting in good-faith reliance upon the law.

The trial court entered thirty-six findings of fact and six conclusions of law. The relevant Findings of Fact are as follows:

5. At 8:22 p.m., Detective Jordan arrived at the scene.[2]

.    .    .

18. Defendant declined to submit to Standardized Field Sobriety Tests (SFSTs) and the breath test.

.    .    .

26. Approximately 10 minutes elapsed from the time Detective arrived at the scene to the time Detective arrested the Defendant.

.    .    .

28. At 9:15 p.m., Defendant arrived at the station.

29. At the station, EPPD Officer Art Senclair discovered that the Defendant had at least two prior Driving While Intoxicated convictions.

---

[1] The trial court heard the initial motion to suppress in December 2014. *McNeely* was decided in April 2013, and the trial court's suppression order was rendered a month later.

[2] In 2013, at the time of the hearing, Officer Jordan had been promoted to Detective.

30. EPPD did not acquire a warrant to draw blood from the Defendant.

31. On September 5, 2009, Detective Jordan could have acquired a warrant for a blood draw, if she wanted to get one on that date.

32. On September 5, 2009, nothing prevented Detective Jordan from acquiring a warrant for a blood draw.

33. There is a magistrate on duty every night from 9:00 p.m. to 6:00 a.m. at the Municipal Court building which was closer to the location where Defendant was arrested than the Police station where Defendant was transported.

34. At 10:25 p.m., Officer Art Senclair followed Texas Transportation Code section 724.012(b)(3)(B), and transported Defendant to Las Palmas hospital for a blood draw.

35. Registered nurse Michael Windham drew Defendant's blood at Las Palmas hospital.

36. The lab result revealed that Defendant's blood alcohol level was 0.23.

The relevant Conclusions of Law are as follows:

1. <u>Missouri v. McNeely</u>, 133 S.Ct. 1552 requires exigent circumstances in order to conduct a warrantless blood draw.

.　　　.　　　.

3. The State did not present any evidence that constituted exigent circumstances.

.　　　.　　　.

5. Texas Transportation Code, section 724.012 (b) (3) (B) allows for a warrantless blood draw on an individual with two or more previous DWI convictions.

6. Pursuant to <u>McNeely</u>, this governmental interest does not justify a departure from obtaining a warrant, unless there are exigent circumstances present.

**DISCUSSION**

The State in a single point of error raises two sub-issues. First, the State contends that the trial court erred by relying on *Missouri v. McNeely* in suppressing the warrantless blood test

4

result obtained pursuant to the implied-consent and mandatory-blood-draw provisions in the Texas Transportation Code § 724.012(b).[3]  *See* TEX.TRANSP.CODE ANN. § 724.012(b)(West 2011).  According to the State, *McNeely* decided the narrow issue of whether the dissipation of alcohol constituted a *per se* exigency that allowed for a warrantless blood draw in DWI cases.  Therefore, the State concludes *McNeely* is inapplicable here given that the State relied on the Texas Transportation Code for implied consent of a warrantless blood-draw in DWI cases involving an accident or prior convictions.  TEX.TRANSP.CODE ANN. §§724.011, 724.012(b).

Second, even if *McNeely* applies, the State posits, the officers acted in objective reasonable reliance upon then-binding precedent and Section 724.012(b), so therefore, the blood test result are not subject to the Fourth Amendment's exclusionary rule.  The State further argues Munoz's 2009 blood test result was not obtained in violation of the law, because the blood draw occurred prior to the issuance of *McNeely* in April 2013.  The State asserts that in 2009, the officers acted in "objective reasonable reliance" under existing precedent and Munoz's warrantless blood draw was proper and therefore, not subject to exclusion under the Fourth Amendment.

Munoz responds that under *McNeely,* a warrantless blood draw is reasonable only if it

---

[3] TEX.TRANSP.CODE ANN. § 724.012(b) provides:

> (b) a peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle . . . and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
>
> .        .        .
>
> (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:
>
> .        .        .
>
> (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04 [misdemeanor DWI] . . . .

falls within a recognized exception to the Fourth Amendment's warrant requirement. Munoz contends, under these facts, the State has failed to secure a warrant or prove any permissible constitutional exception applies.

**STANDARD OF REVIEW**

When reviewing a motion to suppress, we apply a bifurcated standard of review. *See Crain v. State,* 315 S.W.3d 43, 48 (Tex.Crim.App. 2010); *State v. Terrazas*, 406 S.W.3d 689, 692 (Tex.App.--El Paso 2013, no pet.). We afford almost total deference to the trial court's findings of historical fact that are supported by the record, and to mixed questions of law and fact that turn on an assessment of a witnesses' credibility or demeanor. *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex.Crim.App. 2010); *Amador v. State,* 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor are reviewed *de novo.* *See Valtierra*, 310 S.W.3d at 447; *Amador*, 221 S.W.3d at 673; *Kothe v. State,* 152 S.W.3d 54, 62-63 (Tex.Crim.App. 2004); *Guzman,* 955 S.W.2d at 89.

When, as here, the trial judge makes express findings of fact, we must first determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Valtierra,* 310 S.W.3d at 447; *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). We review a trial court's legal ruling *de novo.* *State v. Iduarte,* 268 S.W.3d 544, 548-49 (Tex.Crim.App. 2008). Furthermore, we must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. White,* 306 S.W.3d 753, 757 n.10 (Tex.Crim.App. 2010). "This principal holds true even when the trial judge gives the wrong reason for his decision, and is especially true with regard to

6

admission of evidence." *State v. Esparza*, 353 S.W.3d 276, 282 (Tex.App.--El Paso 2011, pet. granted), *aff'd State v. Esparza,* 413 S.W.3d 81 (Tex.Crim.App. 2013), *quoting Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). "The evident purpose of this rule is to ensure that a trial court ruling will be upheld if the appellate court has assurance that the ruling was just and lawful." *Esparza,* 353 S.W.3d at 282, *quoting White,* 306 S.W.3d at 757 n.10.

## SUPPRESSION OF BLOOD TEST RESULT

In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that an involuntary blood draw is permissible under a Fourth Amendment analysis. Initially, the Court noted that the taking of a blood specimen from a person is a search and seizure under the Fourth Amendment. *Id.* at 767, 86 S.Ct. at 1834. The Court outlined "special facts" under which an involuntary blood draw is reasonable. *Id.* at 770-771, 86 S.Ct. at 1835-36. The Court's analysis concluded that, in light of the potential for the destruction of alcohol evidence in a person's body, and involuntary blood draw is permitted under the Fourth Amendment where there is a delay by law enforcement in investigating an accident; and there is no time to apply for a warrant and locate a magistrate. *Id.*

In *Missouri v. McNeely*, the Court expounded further, explicitly stating that a warrantless blood draw must fall under one of the recognized exceptions to the Fourth Amendment. 133 S.Ct. at 1558. The Court held that the dissipation of alcohol from the body *per se* is insufficient to create an exigent circumstance to justify a warrantless seizure of a defendant's blood. *McNeely*, 133 S.Ct. at 1560-61. The Court instructed us that whether the exigent circumstances exception is satisfied must be viewed case by case in light of the totality of the circumstances. *Id.*

The Texas Court of Criminal Appeals finally addressed the tension between our statutory

7

implied consent, Texas Transportation Code section 724.012(b)(3)(B) and *McNeely* in *State v. Villarreal.*[4]  *State v. Villarreal,* No. PD-0306-14, ___ S.W.3d ___, 2014 WL 6734178, at *1 (Tex.Crim.App. Nov. 26, 2014)(reh'g granted).  In *Villarreal*, the facts are almost identical to the case at hand.

In 2012, Villarreal was stopped for a traffic violation and observed to be swaying back and forth, had red, watery eyes, and slurred speech, in addition to a strong odor of alcohol.  *Id.*  Villarreal was placed under arrest for DWI.  *Id.*  After the discovery of Villarreal's several previous convictions of DWI, the officer took Villarreal to a hospital for a blood draw.  *Id.,* at *2.  Villarreal's blood test result indicated "a blood-alcohol concentration of .16 grams of alcohol per hundred milliliters of blood."  *Id.*  Due to Villarreal's prior convictions, he was subsequently indicted for a felony DWI.  *Id.*

At the evidentiary hearing on Villarreal's motion to suppress, the State's sole witness testified he "could have" obtained a warrant but did not and relied on "the mandatory-blood-draw provision in the Code."  *Id.*; TEX.TRANSP.CODE ANN. § 724.012(b).  Further, the officer stated his decision to conduct the blood draw was based only on the statutory authority and not on any emergency or exigent circumstances.  *Villarreal,* 2014 WL 6734178, at *2.  The parties stipulated Villarreal's blood draw was taken without his consent or a warrant.  *Id.*  Villarreal argued *McNeely* applied and thus the blood draw was unconstitutional.  *Id.*  The State contended that *McNeely* did not apply to mandatory blood draws because of our implied consent statutes. *Id.*

---

[4] We note the Texas Court of Criminal Appeals has granted the State's motion for rehearing in this case on February 25, 2015, but has not withdrawn its opinion on original submission.  While *Villarreal's* future precedential value is not certain, we believe the opinion is persuasive and absent any other guidance from the Texas Court of Criminal Appeals, we will continue to apply its reasoning.  *See Perez v. State*, No. 01-12-01001-CR, ___S.W.2d ___, 2015 WL 1245469, at *6 (Tex.App.--Houston [1st Dist.] Mar. 17, 2015, pet. filed)(applying the *Villarreal* holding after the Texas Court of Criminal Appeals granted rehearing).

The Court, after extensive analysis, held "that a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment." *Id.*, at *21. Our sister courts in applying *Villarreal* have joined the Texas Court of Criminal Appeals in soundly rejecting the State's argument that *McNeely* has limited applicability when construed in conjunction with the Texas Transportation Code § 724.012(b)(3)(B). *See State v. Tercero,* ___ S.W.3d ___, No. 01-14-00120-CR, 2015 WL 1544519 (Tex.App.--Houston [1st Dist.] April 2, 2015, pet. filed); *Chidyausiku v. State*, 457 S.W.3d 627 (Tex.App.--Fort Worth 2015, pet. filed); *State v. Garcia*, 457 S.W.3d 546 (Tex.App.--San Antonio 2015, pet. filed); *Lloyd v. State*, 453 S.W.3d 544 (Tex.App.--Dallas 2014, pet. ref'd); *Cole v. State,* 454 S.W.3d 89 (Tex.App.--Texarkana 2014, pet. granted); *Clement v. State,* 461 S.W.3d 274 (Tex.App.--Eastland 2015, pet. filed); *State v. Martinez,* No. 13-14-00117-CR, 2015 WL 1957087 (Tex.App.--Corpus Christi April 30, 2015, no pet. h.)(mem. op., not designated for publication); *Evans v. State*, No. 14-13-00642-CR, 2015 WL 545702 (Tex.App.--Houston [14th Dist.] Feb. 10, 2015, pet. filed)(mem. op., not designated for publication).

Likewise, our previous approach has followed *Villarreal*. *See Burcie v. State,* No. 08-13-00212-CR, 2015 WL 2342876 (Tex.App.--El Paso May 14, 2015, pet. filed)(not designated for publication). In *Burcie,* like the case before us, the facts were not in dispute and the State had failed to raise any recognizable exception to the Fourth Amendment. The record here shows the officer relied on the implied consent under the Texas Transportation Code and could have obtained a warrant but chose not to. Like *Villarreal* and *Burcie*, the State relies on the implied consent and mandatory-blood-draw provisions of the Texas Transportation Code to support the

9

admission of the blood test result. The trial court concluded as a matter of law the State failed to present "any evidence that constituted exigent circumstances." The record supports that conclusion. Given that the Texas Transportation Code's mandatory-blood-draw is not a valid exception to the Fourth Amendment, the trial court did not err in suppressing the blood test result.

We find under *Missouri v. McNeely* and *State v. Villarreal* the State's first sub-issue is overruled.

## GOOD-FAITH RELIANCE

The State, in their second sub-issue, urges us to find the trial court erred because in 2009 the blood draw was not obtained in violation of federal Fourth Amendment exclusionary rule nor Texas' exclusionary rule found in Article 38.23 of the Texas Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 38.23 (West 2005). That statute provides evidence may not be used or admitted in the criminal trial against the defendant if the evidence is obtained by "an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America[.]" TEX.CODE CRIM.PROC.ANN. art. 38.23(a). Moreover, the State contends, in 2009, at the time of Munoz's blood draw, the officers acted in objective reasonable reliance of the existing law.

First, the State argues that Munoz's blood test was not obtained in contravention of then existing federal precedent and therefore, even if *McNeely* applies, the blood test should not be excluded. The State cites *Davis v. United States,* for the proposition that the "exclusionary rule is limited to situations in which deterrence is 'thought most efficaciously served.'" *Davis v. United States,* __ U.S. __, 131 S.Ct. 2419, 2426, 180 L.Ed.2d 285 (2011), *citing U.S. v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). As the State correctly

points out, *Davis* made clear a constitutional violation does not always mandate the applicability of exclusionary rule. The *Davis* court explained the exclusionary rule never applies to the suppression of evidence when it was obtained "as a result of nonculpable, innocent police conduct." 131 S.Ct. at 2429. The State also pointed to the holdings in *Krull, Leon,* and *Peltier* to illustrate that the United States Supreme Court has prohibited the application of the Fourth Amendment's exclusionary rule when an officer has in good-faith, objectively and reasonably relied on a then constitutional statute or valid search warrant. *Illinois v. Krull*, 480 U.S. 340, 347, 350, 197 S.Ct. 1160, 1165-66, 94 L.Ed.2d 364 (1987); *United States v. Leon*, 468 U.S. 897, 922 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984); *United States v. Peltier,* 422 U.S. 531, 537, 95 S.Ct. 2313, 2317-18, 45 L.Ed.2d 374 (1975).

Relying on *Swink v. State* and *Elias v. State*, the State contends that *McNeely* should not be applied retroactively. *Swink v. State,* 617 S.W.2d 203, 209-210 (Tex.Crim.App. 1981)(o*verruled on other grounds by Griffin v. State,* 765 S.W.2d 422 (Tex.Crim.App. 1989)); *State v. Elias,* No. 08-08-00085-CR, 2012 WL 4392245, at *7 (Tex.App.--El Paso Sept. 26, 2012, pet. ref'd)(not designated for publication). In *Swink*, the Texas Court of Criminal Appeals held "that the warrantless search and seizure of the premises by the officers was permissible at the time of their actions and that the holding of Mincey will not be applied retroactively to this case." *Swink,* 617 S.W.2d at 210. The Court explained the "search was conducted some six months before the decision in Mincey while the trial was held six months after the decision. . . . Thus, at the time officers conducted the warrantless search of the murder scene, their actions did not run afoul of the holding in Mincey." *Id.* at 209. *See Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

In *Elias*, relying on *Davis v. United States,* __ U.S. __, 131 S.Ct. 2419, 180 L.Ed.2d 285

11

(2011), we held that "the search of Elias's van was unconstitutional under *Gant,* [however] the police conducted the search in 2007 in good faith reliance on appellate precedent authorizing the search incident to arrest. Accordingly, we conclude that the exclusionary rule does not apply in this case." *Elias*, 2012 WL 4392245, at \*7. *See Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Thus, *Swink* refused to apply *Mincey* retroactively. *Swink,* 617 S.W.2d at 210. Likewise, *Elias* did not apply *Gant* retroactively, relying on the federal doctrine of the officers' good faith reliance under *Davis. Elias,* 2012 WL 4392245, at \*7. Neither case alludes to or discusses the Texas exclusionary rule under Article 38.23 and its application to an officer's good faith reliance on then-constitutional statutes and former binding precedent. TEX.CODE CRIM.PROC.ANN. art. 38.23. We note that *Swink* and *Elias* are specifically limited to the application of *Mincey* and *Gant*. Our research has failed to uncover any Texas case, under these facts, declining to retroactively apply *McNeely* and the State has not cited to any.

The United States Supreme Court in *Griffith* explained that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Griffith v. Kentucky,* 479 U.S. 314, 322, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987). The *Griffith* Court held that a newly announced constitutional rule for conducting criminal prosecutions must be applied retroactively to all cases, state or federal, pending on direct review or not yet final when the rule was announced regardless whether they constitute a clear break from the past. *Griffith,* 479 U.S. at 328, 107 S.Ct. at 716. *See McClintock v. State,* 444 S.W.3d 15 (Tex.CrimApp. 2014). The Supreme Court's retroactivity analysis for federal constitutional errors is binding upon the states when federal constitutional errors are involved. *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 535, 111 S.Ct.

12

2439, 2443, 115 L.Ed.2d 481 (1991). This case was not yet final when *McNeely* was decided in April 2013 and it applies here on direct appeal.

The court in *Douds v. State*, held the good-faith reliance exception does not apply in Texas. *Douds v. State,* 434 S.W.3d 842, 861 (Tex.App.--Houston [14th Dist.] 2014, pet. granted)(en banc). The Texas Supreme Court has resisted efforts to expand the good-faith exception using federal precedent, especially in those instances when the federal exceptions conflict with our statutory exclusionary rule. *Howard v. State,* 617 S.W.2d 191, 193 (Tex.Crim.App. 1979)(op. on reh'g)(rejecting the federal good-faith doctrine of *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)); *also see State v. Daugherty*, 931 S.W.2d 268 (Tex.Crim.App. 1996). Other Texas Courts of Appeals have come to that same conclusion, specifically when evaluating the admissibility of blood test results under *McNeely*. *Douds,* 434 S.W.3d at 862; *see also State v. Anderson,* 445 S.W.3d 895, 912 (Tex.App.--Beaumont 2014, no pet.); *Tercero*, 2015 WL 1544519, at *6. We decline the State's invitation to create a good-faith reliance exception to the application of *McNeely*.

Lastly we consider whether Texas's exclusionary rule as codified in the Code of Criminal Procedure article 38.23 allows for the admission of the blood test result. The exception to Texas's exclusionary rule is legislative and found in Article 38.23(b) which only applies when a warrant issued by a neutral magistrate, based on probable cause, and is relied upon by the officer in good-faith. TEX.CODE CRIM.PROC.ANN. art. 38.23(b). As a result of the lack of a warrant being issued, the statutory exception in Article 38.23(b) does not apply here. *Douds*, 434 S.W.3d at 861; *Anderson,* 445 S.W.3d at 912; *Tercero,* 2015 WL 1544519, at *6-*7; *Burks v. State,* 454 S.W.3d 705, 709 (Tex.App.--Fort Worth 2015, pet. filed); *Martinez v. State*, No. 04-13-00764-CR, 2014 WL 5837162, at *2 (Tex.App.--San Antonio Nov. 12, 2014, pet. filed)(mem. op., not

13

designated for publication); *Weems v. State,* 434 S.W.3d 655, 666 (Tex.App.--San Antonio 2014, pet. granted); *State v. Stewart,* No. 09-13-00421-CR, 2014 WL 5855905, at *4 (Tex.App.--Beaumont Nov. 12, 2014, pet. ref'd)(mem. op., not designated for publication).

We overrule the State's second sub-issue.

## CONCLUSION

We conclude the trial court did not abuse her discretion in determining there were no exigent circumstances that justified a warrantless blood draw from Munoz. We affirm the trial court's order granting the motion to suppress.

July 31, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., Not Participating

(Publish)

14