COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ANA LICIA BRAVO, | § | 08-14-00160-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court No. 2 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2012C07668) |
| | § | |

## O P I N I O N

Ana Licia Bravo was charged and convicted for the offense of driving while intoxicated. Prior to trial, Bravo filed a motion to suppress the results of a blood draw taken during the police investigation of an automobile accident. The trial court overruled Bravo's motion to suppress. Finding that the State failed to establish any exception to the Fourth Amendment's warrant requirement and therefore violated Bravo's rights under the Fourth Amendment, we reverse the trial court's judgment and remand the case for a new trial.

## FACTUAL SUMMARY

On April 8, 2012, around 9:30 p.m., El Paso Police Officer Anthony Alegre responded to a dispatch at a local bar regarding a vehicle that fled the scene of an automobile accident. At the bar, Officer Alegre spoke with eyewitnesses to the accident that followed the fleeing vehicle from

the scene of the accident. The eyewitnesses pointed out the driver, Bravo, to Officer Alegre. Based on the eyewitnesses' account, Officer Alegre attempted to speak with Bravo while Bravo was receiving medical attention at the bar parking lot. Officer Alegre testified that he smelled alcohol on Bravo's person while at the bar parking lot. An ambulance then transported Bravo to Del Sol Medical Hospital in El Paso, Texas ("Del Sol").

El Paso Police Officer William Alexander had been dispatched to the scene of the accident and, after conducting a preliminary investigation at the scene and speaking to Officer Alegre, went to Del Sol to continue his investigation. Officer Alegre conducted standardized-field-sobriety tests ("SFSTs") on Bravo at Del Sol. The officers arrested Bravo after she failed the SFSTs. After advising Bravo of her statutory and *Miranda* rights, the officers requested a blood specimen, which Bravo refused. The officers testified that neither obtained Bravo's consent to retrieve the blood and that they did not apply for a warrant to obtain Bravo's blood specimen. Officer Alegre informed Bravo of the Transportation Code's provisions giving rise to a mandatory blood draw if an individual is involved in an accident with injuries. An on-duty phlebotomist thereafter obtained a blood specimen from Bravo.

## PROCEDURAL BACKGROUND

Bravo filed a pretrial motion on December 7, 2012, to suppress the arrest, statements, and electronic and physical evidence obtained during the officers' investigation—including the blood draw specimen and results. On April 9, 2013, the trial court heard testimony and arguments regarding Bravo's motion to suppress. At the hearing, Officer Alegre testified that after being notified that others involved in the accident had been transported to the hospital, it was his understanding that under the Transportation Code, Bravo was subject to a mandatory blood draw.

2

The trial court denied Bravo's motion, and made the relevant Findings of Fact:

7. The [trial court] finds that the officer detained the defendant that the witnesses pointed out as the driver who had fled the scene, that the officer smelled an odor of alcohol on her person;

.          .          .

10. The [trial court] finds that the defendant was placed under arrest and read the DIC-24 warnings and Miranda warnings;

11. The [trial court] finds that Officer Alegre was advised that there were injuries at the first accident scene and that passengers were taken to the hospital. The officer requested a blood draw of the defendant[.]

In addition, the trial court made the relevant Conclusions of Law:

2. The [trial court] concludes that the specimen of the blood may be taken once the defendant was placed under arrest and the officer received information that the defendant was involved in an automobile accident and other individuals involved in the accident were transported to the hospital[.]

Bravo again raised the issue of the warrantless, non-consensual blood draw at trial and renewed the motion to suppress the blood draw results in light of a then recent United States Supreme Court ruling, *Missouri v. McNeely*, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). The trial court again denied Bravo's motion. The State offered the blood draw results at trial over Bravo's renewed objection. Officer Alegre testified that the results showed that Bravo was over the legal limit to operate a vehicle. In addition, Officer Alegre and Officer Alexander both confirmed that they did not obtain a warrant to seize Bravo's blood specimen and that they did not have Bravo's consent to draw the blood. At trial, Officer Alegre testified that he informed Bravo of the mandatory blood draw provision under the Texas Transportation Code, and reaffirmed his reliance on the Code's applicability in conducting the blood draw upon Bravo.

After the State rested its case, Bravo re-urged her arguments regarding the motion to

3

suppress the blood draw specimen and results in light of *McNeely*, in addition to a then recent Texas Court of Criminal Appeals case, *State v. Villarreal*, 475 S.W.3d 784 (Tex.Crim.App. 2014) *reh'g denied,* 475 S.W.3d 817 (Tex.Crim.App. 2015)(per curiam), *cert. denied*, 136 S.Ct. 2544 (2016). The trial court again denied Bravo's motion. Bravo now appeals the trial court's rulings.

## DISCUSSION

Bravo's first issue is that in light of *McNeely*, the trial court erred in denying Bravo's motion to suppress the warrantless, non-consensual blood draw resulting from Bravo's arrest for driving while intoxicated.[1] The State argues that *McNeely* decided the narrow issue of the Fourth Amendment's exigency exception, not applicable here, and requests that this Court find that the trial court did not commit an error when it denied Bravo's motions.

### *Standard of Review*

We review a trial judge's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex.Crim.App. 2013). First, the judge is the sole trier of fact and judge of witnesses' credibility and the weight to be given their testimony. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010). When findings of fact are not entered, we view the evidence in the light most favorable to the judge's ruling and assume the judge made implicit findings of fact that support the ruling as long as the record supports those findings. *Id*. at 447. Second, we review a judge's application of the law to the facts *de novo*. *Id*. We will sustain the judge's ruling if the record reasonably supports that ruling and is correct on any theory of law applicable to the case. *Id*. at 447-48. Lastly, when evidence is

---

[1] Appellant's second issue is the trial court erred when it failed to instruct the jury to disregard the blood evidence if they found the evidence was collected in violation of Article 38.23 of the Texas Code of Criminal Procedure. Appellant's first issue is dispositive in this appeal, therefore, we do not reach her second issue.

unconstitutionally admitted, we must reverse the trial court's judgment unless we determine, beyond a reasonable doubt, that the error did not contribute to the conviction or punishment. TEX.R.APP.P. 44.2(a).

## *The Fourth Amendment and Blood Draws*

*Schmerber v. California* established that an involuntary blood draw could pass Fourth Amendment scrutiny. 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The Supreme Court first determined that taking a blood specimen from a person constituted a search and seizure. *Id*. at 767, 86 S.Ct. at 1834. The Supreme Court found that an involuntary blood draw was reasonable under the exigent circumstances exception to the Fourth Amendment based on three factors established in *Schmerber*: (1) the dissipation of alcohol in the blood; (2) the delay in taking the accused to the hospital during an automobile accident investigation; and (3) the lack of time to secure a magistrate and obtain a warrant. *Id*. at 770-71, 86 S.Ct. at 1835-36. The Supreme Court revisited the involuntary blood draw issue in *McNeely*, where the State of Missouri posited the dissipation factor itself was sufficient to establish an exigent circumstance and, therefore, was an exception to the Fourth Amendment's warrant requirement. *McNeely*, 133 S.Ct. at 1560. A plurality of the court disagreed and held that the dissipation of alcohol from the body alone is, *per se*, insufficient to create and exigent circumstance to justify a warrantless seizure of a person's blood specimen. *Id*. at 1561. The Supreme Court explained that a warrantless blood draw must fall under one of the recognized exceptions to the Fourth Amendment and that a trial court must make a determination on a case-by-case basis in light of the totality of the circumstances. *Id*. 1561, 1558.

## *The Fourth Amendment and Texas' Transportation Code*

5

Texas' mandatory blood draw statute mandates blood draws when, *inter alia*, an officer arrests a person for the offense of driving while intoxicated and the person is either: involved in an accident involving serious injury or death; or, that person has two or more prior convictions of driving while intoxicated. TEX.TRANSP.CODE ANN. § 724.012(b)(West 2011). The Texas Court of Criminal Appeals resolved the confusion between Texas' mandatory blood draw statute and *McNeely* in 2014. *Villarreal*, 475 S.W.3d at 784.

In *Villarreal*, an officer conducting a traffic stop found the driver to have slurred speech, red and watery eyes, and a strong scent of alcohol. *Id*. at 788. The driver in *Villarreal* refused to partake in the SFSTs. *Id*. After conducting a background check, which showed that the driver had several prior driving while intoxicated convictions, the officer in *Villarreal* took the driver to a hospital for a blood draw despite the driver's lack of consent. *Id*. The officer there relied on Texas' mandatory blood draw statute explaining that while he "'could have' obtained a warrant . . . [he] believed he 'did not statutorily have to' in light of the [Transportation Code]." *Id*. at 789. The Court of Criminal Appeals held:

> [T]he provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement. We thus reject the State's assertion that a warrantless, nonconsensual blood draw conducted pursuant to those provisions can fall under one of the established exceptions to the warrant requirement . . . and we further reject the State's suggestion that such a search may be upheld under a general Fourth Amendment balancing test.

*Villareal*, 475 S.W.3d at 813.

The one distinguishing factor between *Villarreal* and this case is that in *Villarreal*, the officer relied on the third prong of the Code—the prior driving while intoxicated convictions prong—whereas in this case, Officer Alegre relied on the first prong—the accident involving

6

serious injury or death prong. TEX.TRANSP.CODE ANN. § 724.012(b)(3),(b)(1); *Villarreal*, 475 S.W.3d at 788. This difference is insufficient for this Court to refuse to follow the holding in *Villarreal*.

This Court has followed the Texas Court of Criminal Appeals in rejecting the argument that *McNeely* has limited applicability when construed in conjunction with Section 724.012(b) of the Texas Transportation Code. *See State v. Munoz*, 474 S.W.3d 8, 14 (Tex.App.--El Paso 2015, pet. ref'd). In the present case, while the then current law regarding the interplay between the Transportation Code and *McNeely* was unclear, in light of *Villarreal*, this Court finds that the trial court erred when it denied Bravo's motions since the Transportation Code, by itself, does not create exigent circumstances. *Villarreal*, 475 S.W.3d at 814-15 (the "nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment.").

Both at the suppression hearing and at trial, neither Officer Alegre nor Officer Alexander provided testimony suggesting any recognized exception to the Fourth Amendment's warrant requirement. The officers testified that they did not apply for or receive a warrant for the blood draw and that Bravo did not consent to the blood draw. Their testimony was, however, that they relied on the Transportation Code's implied consent provision when obtaining the blood draw. In addition, the trial court made no findings of fact or conclusions of law beyond the Transportation Code's implied consent provisions that would indicate any factors suggesting a recognized exception to the warrant requirement. Given that the Texas Transportation Code's mandatory blood draw is not a valid exception to the Fourth Amendment's warrant requirement, the trial court

7

erred in failing to suppress the blood test results. Bravo's first issue on appeal is sustained. In light of this Court's holding on Bravo's first issue on appeal, we need not address Bravo's second issue on appeal since it is unnecessary to the resolution of this appeal. TEX.R.APP.P. 47.1.

## *Good Faith Reliance*

The State further argues that because neither *McNeely* nor *Villarreal* had been decided when the officers conducted Bravo's blood draw, the officers' reasonable reliance on what they believed to be a valid statutory mandate necessitates that this Court uphold the trial court's rulings.[2] The United States Supreme Court has held, however, that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Griffith v. Kentucky*, 479 U.S. 314, 322, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987). In *Griffith*, the Supreme Court held that a newly announced constitutional rule for conducting criminal prosecutions must be applied retroactively to all cases, state or federal, pending on direct review or not yet final when the rule is announced, despite there being a clear break from the past. *Id*. at 328, 107 S.Ct. at 716. This case was not final when *McNeely* or *Villarreal* were decided and so they apply here on direct appeal. *See Munoz*, 474 S.W.3d at 16.

## *Harm*

Because the warrantless, non-consensual blood draw violated Bravo's rights under the Fourth Amendment, we must reverse the judgment unless we determine, beyond a reasonable doubt, that the error did not contribute to the conviction or punishment. TEX.R.APP.P. 44.2(a). The jury was instructed as follows:

> The term 'intoxicated' means not having the normal use of one's mental or physical faculties by the reason of the introduction of alcohol into the body or by

---

[2] *McNeely* was decided on April 17, 2013. *See McNeely*, 133 S. Ct. at 1552. *Villarreal* was decided on November 26, 2014. *See Villarreal*, 475 S.W.3d at 784.

having an alcohol concentration of 0.08 or more.

Officer Alegre's testimony that Bravo's blood alcohol concentration was over the legal limit was based on the blood test results obtained through the warrantless, non-consensual blood draw. Officer Alexander further testified at trial indicating that Bravo's blood alcohol concentration was over the legal limit based on the results of the warrantless, non-consensual blood draw. Given this testimony and the jury's instruction, we cannot determine beyond a reasonable doubt that the error did not contribute to Bravo's conviction.

## CONCLUSION

Because the warrantless blood draw violated Bravo's rights under the Fourth Amendment and we cannot reasonable find that the erroneous admission of the blood draw results did not contribute to the conviction, we reverse the judgment of the trial court and remand the cause for a new trial.

_____

October 19, 2016                                YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

9