PD-1276-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/25/2015 2:39:05 PM
Accepted 9/30/2015 11:56:42 AM
ABEL ACOSTA
CLERK

NO. PD-_____

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

---

THE STATE OF TEXAS                                       APPELLANT

V.

VICENTE MUNOZ                                            APPELLEE

---

THE STATE'S PETITION FOR DISCRETIONARY REVIEW

---

FROM THE COURT OF APPEALS, EIGHTH DISTRICT OF TEXAS
CAUSE NUMBER 08-13-00164-CR

JAIME ESPARZA
DISTRICT ATTORNEY
34th JUDICIAL DISTRICT

DOUGLAS K. FLETCHER
ASST. DISTRICT ATTORNEY
DISTRICT ATTORNEY'S OFFICE
500 E. SAN ANTONIO, ROOM 201
EL PASO, TEXAS 79901
(915) 546-2059 ext. 4402
FAX: (915) 533-5520
SBN: 24006412

ATTORNEYS FOR THE STATE

FILED IN
COURT OF CRIMINAL APPEALS

September 30, 2015

ABEL ACOSTA, CLERK

i

## IDENTITY OF PARTIES AND COUNSEL

**APPELLANT**: The State of Texas, 34th Judicial District Attorney's Office, represented in the trial court by:

Jaime Esparza, District Attorney
Ghalib A. Serang, Assistant District Attorney
Dolores Reyes, Assistant District Attorney

On appeal by:

Jaime Esparza, District Attorney
Douglas K. Fletcher, Assistant District Attorney

and on petition for discretionary review by:

Jaime Esparza, District Attorney
Douglas K. Fletcher, Assistant District Attorney
500 E. San Antonio, Room 201
El Paso, Texas 79901
(915) 546-2059

**APPELLEE**: Vicente Munoz, represented in the trial court by:

Cary Antwine
8732 Alameda St.
El Paso, Texas 79901
(915) 858-0665

and on appeal by:

Matthew DeKoatz
P.O. Box 1886
El Paso, Texas 79950

**TRIAL COURT**: 171st District Court, Honorable Judge Bonnie Rangel, presiding

**COURT OF APPEALS**: Eighth Court of Appeals, Honorable Chief Justice Ann Crawford McClure, Honorable Justice Yvonne T. Rodriguez, and Honorable Justice Steven Hughes

ii

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL     ii

INDEX OF AUTHORITIES     v

STATEMENT REGARDING ORAL ARGUMENT     vi

STATEMENT OF THE CASE     vii

STATEMENT OF PROCEDURAL HISTORY     viii

GROUNDS FOR REVIEW     1

FACTUAL SUMMARY     1-2

**GROUND FOR REVIEW ONE:**     3
**The Eighth Court of Appeals erred in holding that a nonconsensual blood draw pursuant to the mandatory-blood-draw and implied-consent provisions set forth in Chapter 724 of the Texas Transportation Code violated the Fourth Amendment.**

**GROUND FOR REVIEW TWO:**     4-6
**The Eighth Court of Appeals erred in holding that the pre-*McNeely* warrantless blood draw in this case violated the Fourth Amendment where the officer obtained the blood-draw evidence based upon an objectively reasonable, but ultimately mistaken belief that the mandatory blood-draw provisions fell under a constitutionally valid exception to the Fourth Amendment's warrant requirement.**

PRAYER     7

SIGNATURES     7

CERTIFICATE OF COMPLIANCE     8

CERTIFICATE OF SERVICE     8

APPENDIX A     9

# INDEX OF AUTHORITIES

## FEDERAL CASES

*Heien v. North Carolina*, _U.S._, 135 S.Ct. 530,
190 L.Ed.2d. 475 (2014) ........................................................................ 4-6

*McNeely v. Missouri*, _U.S._, 133 S.Ct. 1552,
185 L.Ed.2d 696 (2014) ........................................................................ 3

*Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627,
61 L.Ed.2d 343 (1979) ........................................................................ 5

## STATE CASES

*Burcie v. State*, No. 08-13-00212-CR, 2015 WL 2342876
(Tex. App.-El Paso 14 May 2015, pet. filed)
(not designated for publication) ........................................................... 6

*Munoz v. State*, No. 08-13-00164-CR, 2015 WL 4719559
(Tex. App.-El Paso 31 July 2015, pet. filed)
(not released for publication) ........................................................ viii, 3

*State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178
(Tex. Crim. App. 26 November 2014, reh'g granted) ........................... 3, 6

## STATUTES AND RULES

TEX PENAL CODE §38.23(a) .................................................................. 4

TEX. R. APP. P. 68.2(a) ...................................................................... viii

TEX. TRANSP. CODE §724.012(b)(3)(B) ......................................... 2, 5

## STATEMENT REGARDING ORAL ARGUMENT

The State does not believe that oral argument is necessary in this case, as the State's arguments are and will be set out fully in this petition and brief, should this Court grant review. However, should this Court determine that oral argument would be helpful in resolving the issue raised in this petition, the State would certainly welcome the opportunity to appear before the Court.

# STATEMENT OF THE CASE

On 5 September 2009, Vicente Munoz (hereinafter referred to as Munoz) was arrested for driving while intoxicated (DWI). (SX 15-16).[1] Munoz refused to perform any standardized field-sobriety tests (SFSTs) or submit a sample of his breath. (SX 1 at 15-16). As Munoz had seven prior convictions for DWI, the arresting officer took Munoz to a local hospital for a blood draw as mandated by Texas law. (SX 1 at 16-17, 22). Munoz' blood-alcohol level was .25. (Supp. RR at 12, 31). On 26 June 2012, Munoz was indicted for the felony offense of DWI, third or more. (CR at 3). The trial court denied Munoz' motion to suppress the evidence from his warrantless blood draw. (SX 1 of RR 4 at 30, RR 2 at 23). A jury trial began on 13 May 2013. (Supp. RR at 1). On 14 May 2013, the trial court, *sua sponte*, set aside its prior order denying Munoz' motion to suppress the blood-draw evidence and reopened the motion-to-suppress hearing. (RR 3 at 5, 10). After receiving testimony from the arresting officer, the trial court granted Munoz' motion to suppress, declared a mistrial, and dismissed the jury. (RR 3 at 6-17, 27).

---

[1] Throughout this brief, references to the record will be made as follows: references to the clerk's record will be made as "CR" and page number; references to the reporter's record will be made as "RR" and volume and page number; references to the supplemental reporter's record will be made as "Supp. RR" and page number; and references to exhibits will be made as either "SX" or "DX" and exhibit number.

## STATEMENT OF PROCEDURAL HISTORY

On 16 May 2013, the State requested that the trial court reconsider its order granting Munoz' motion to suppress. (RR 4 at 4). The trial court denied the State's motion to reconsider on 20 May 2013. (CR at 115). On 22 May 2013, the trial court issued findings of fact and conclusions of law. (CR at 116-118). The State timely filed notice of appeal on 6 June 2013. (CR at 120).

On 31 July 2015, the Eighth Court of Appeals affirmed the trial court's granting of Munoz' motion to suppress the results of his mandatory blood draw. *See Munoz v. State*, No. 08-13-00164-CR, 2015 WL 4719559 at *7 (Tex. App.-El Paso 31 July 2015, no pet. h.) (not yet released for publication). *See* (Appendix A).

On 14 August 2015, the State timely filed a request for rehearing. The Eighth Court of Appeals denied, without written opinion, the State's motion for rehearing on 26 August 2015.

The State now timely files this petition for discretionary review (PDR) pursuant to rule 68.2(a) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 68.2(a).

## GROUNDS FOR REVIEW

**GROUND FOR REVIEW ONE**: The Eighth Court of Appeals erred in holding that a nonconsensual blood draw pursuant to the mandatory-blood-draw and implied-consent provisions set forth in Chapter 724 of the Texas Transportation Code violated the Fourth Amendment.

**GROUND FOR REVIEW TWO**: The Eighth Court of Appeals erred in holding that pre-*McNeely* warrantless blood draw in this case violated the Fourth Amendment where the officer obtained the blood-draw evidence based upon an objectively reasonable, but ultimately mistaken belief that the mandatory blood-draw provisions fell under a constitutionally valid exception to the Fourth Amendment's warrant requirement.

## FACTUAL SUMMARY

On 5 September 2009, El Paso Police Department Officer Jordan was dispatched to investigate a report of a suspicious vehicle that had stopped and remained parked for a lengthy time with its engine off and its lights on. (SX 1 at 10). No one had entered or exited the vehicle. (SX 1 at 19). Officer Jordan observed Munoz asleep in the driver's seat with a large can of beer between his thighs. (SX 1 at 14). Officer Jordan detected a very strong odor of an unknown alcoholic beverage emanating from Munoz and the vehicle. (SX 1 at 14). Officer Jordan woke up Munoz. (SX 1 at 15). As Officer Jordan was talking with Munoz, she noted that he had slurred speech and red, bloodshot eyes. (SX 1 at 15). When Munoz exited the vehicle, Officer Jordan observed that he had an unsteady balance and that he looked disheveled. (SX 1 at 15). Munoz refused Officer Jordan's request that he perform some standardized field-sobriety tests (SFSTs) and provide

1

a sample of his breath. (SX 1 at 15-16). After being advised of his statutory rights, Munoz again refused to submit to a breath test. (SX 1 at 16). Munoz was taken into custody and transported to the police station. (SX 1 at 16). Officer Jordan learned that Munoz had seven prior convictions for DWI. (SX 1 at 16-17, 22). As required by section 724.012(b)(3)(B) of the Texas Transportation Code, Munoz was taken to a local hospital where a blood sample was drawn. (SX 1 at 17). TEX. TRANSP. CODE §724.012 (b)(3). Officer Jordan did not seek a warrant for the blood draw due to the Texas mandatory blood-draw statute. (RR 3 at 14-15, 17). Munoz' blood-alcohol level was .25. (Supp. RR at 12, 31).

**GROUND FOR REVIEW ONE:**The Eighth Court of Appeals erred in holding that a nonconsensual blood draw pursuant to the mandatory-blood-draw and implied-consent provisions set forth in Chapter 724 of the Texas Transportation Code violated the Fourth Amendment.

## ARGUMENT AND AUTHORITIES

On 31 July 2015, the Eighth Court of Appeals rendered its decision affirming the trial court's granting of Munoz' motion to suppress the results of his mandatory blood draw. *See Munoz,* 2015 WL 4719559 at *7. *See* (Appendix A). The Eighth Court of Appeals rejected the State's arguments that the United States Supreme Court's decision in *McNeely v. Missouri,* _U.S._, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2014), did not overrule the implied-consent provisions in the Texas Transportation Code. *See Munoz,* 2015 WL 4719559 at *5. This Court has granted the State's motion for rehearing in *Villarreal*[2] regarding some of the same issues presented by State in the present case. *See* (State's Motion for Rehearing and Amended Motion for Rehearing in *Villarreal*). (Appendix B). In light of the "uncertain precedential value" of *Villarreal* and the reasons set forth in the State's brief on original appeal, this Court should grant the State's Petition for Discretionary Review. *See Munoz,* 2015 WL 4719559 at *4 n.4, *5.

---

[2] *State v. Villarreal,* No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. 26 November 2014, reh'g granted).

**GROUND FOR REVIEW TWO:** The Eighth Court of Appeals erred in holding that the pre-*McNeely* warrantless blood draw in this case violated the Fourth Amendment where the officer obtained the blood-draw evidence based upon an objectively reasonable, but ultimately mistaken belief that the mandatory blood-draw provisions fell under a constitutionally valid exception to the Fourth Amendment's warrant requirement.

## ARGUMENT AND AUTHORITIES

### I. Munoz' pre-*McNeely* warrantless blood draw did not violate the Fourth Amendment.

The Texas exclusionary rule, as set forth in article 38.23 of the Texas Code of Criminal Procedure, provides that "no evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas or of the Constitution or laws of the United States of America, shall be admitted in evidence against an accused on trial of any criminal case." TEX. CODE CRIM PROC. art. 38.23(a). In the present case, the arresting officer acted in objectively reasonable compliance with a presumptively valid statute, and thus, there was no violation of the Fourth Amendment, and the exclusionary rule of article 38.23 is not applicable.

On 15 December 2014, the United States Supreme Court issued its opinion in *Heien v. North Carolina*, \_U.S.\_, 135 S.Ct. 530, 190 L.Ed.2d. 475 (2014). In *Heien*, a North Carolina deputy sheriff conducted a traffic stop of Heien after observing that his vehicle had only one operable brake light. *Id.* at 534. The deputy became suspicious when Heien and his passenger acted nervously and gave

4

inconsistent stories about their itinerary. *Id.* After Heien consented to a search of his vehicle, the deputy found a plastic baggie containing cocaine. *Id.* Heien's motion to suppress was denied by the trial court. *Id.* The North Carolina Court of Appeals reversed, however, after determining that the traffic stop was illegal because North Carolina law only required one working brake light. *Id.* at 535. The case eventually reached the United States Supreme Court. *Id.* Declaring that "the ultimate touchstone of the Fourth Amendment is reasonableness" and that "to be reasonable is not to be perfect," the Court held that a reasonable, mistaken belief as to the law does not violate the Fourth Amendment. *Id.* at 536.

At the time of Munoz' arrest for driving while intoxicated, Texas Transportation Code section 724.012(b)(3)(B) clearly mandated that, due to his prior DWI convictions, a sample of his blood be obtained. TEX. TRANSP. CODE §724.012(b)(3)(B). Officer Jordan acted under an objectively reasonable belief that the blood-draw statute was lawful. *See Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d343 (1979) (finding that the enactment of a law forecloses speculation by law-enforcement officers concerning its constitutionality). As recently stated in *Heien*, when "the law turns out not to be what was thought, the result is the same," there is no violation of the Fourth Amendment. *See Heien*, 135 S.Ct. at 536. And because Munoz' blood draw was conducted in compliance with a

presumptively valid statute, the officers did not violate the law, and thus, there

was no Fourth Amendment violation. *See Heien*, 135 S.Ct. at 536.[3]

---

[3] Nothing in the record indicates that Officer Jordan's badge came with a crystal ball attached, and thus, she would have had no reason to believe her actions on 5 September 2009, were unlawful based on court decisions five years in the future, *See*, e.g., *Villarreal*, 2014 WL 6734178 at *1, decided on 26 November 2014; *Burcie v. State*, No. 08-13-00212-CR, 2015 WL 2342876 at *1 (Tex. App.-El Paso 14 May 2015, pet. filed) (not designated for publication).

## **PRAYER**

WHEREFORE, the State prays that this petition for discretionary review be granted, and that upon hearing, the Court reverse the judgment of the Court of Appeals and remand the case to the trial court for such proceedings as may be appropriate.

Respectfully submitted,

JAIME ESPARZA
DISTRICT ATTORNEY
34th JUDICIAL DISTRICT

/s/ Douglas Fletcher
DOUGLAS K. FLETCHER
ASST. DISTRICT ATTORNEY
DISTRICT ATTORNEY'S OFFICE
500 E. SAN ANTONIO, ROOM 201
EL PASO, TEXAS 79901
(915) 546-2059 ext. 4402
FAX: (915) 533-5520
EMAIL: dfletcher@epcounty.com
SBN: 24006412

ATTORNEYS FOR THE STATE

## CERTIFICATE OF COMPLIANCE

The undersigned does hereby certify that the foregoing petition for discretionary review contains 1192 words.

/s/ Douglas Fletcher
DOUGLAS K. FLETCHER

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on 25 September 2015:

(1) a copy of the foregoing petition for discretionary review was electronically served upon appellee's attorney, Matthew DeKoatz at mateodekoatz@yahoo.com,

(2) a copy of the foregoing petition for discretionary review was electronically served upon the State's Prosecuting Attorney at Lisa.McMinn@spa.texas.gov

/s/ Douglas Fletcher
DOUGLAS K. FLETCHER

# APPENDIX A

2015 WL 4719559
Only the Westlaw citation
is currently available.

NOTICE: THIS OPINION HAS NOT
BEEN RELEASED FOR PUBLICATION
IN THE PERMANENT LAW REPORTS.
UNTIL RELEASED, IT IS SUBJECT
TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas,
El Paso.

The State of Texas, Appellant,
v.
Vicente Munoz, Appellee.

No. 08–13–00164–
CR   |   July 31, 2015

**Synopsis**
**Background:** State appealed from decision
of the 171st District Court, El Paso County,
granting defendant's suppression motion.

**Holdings:** The Court of Appeals, Yvonne T.
Rodriguez, J., held that:

[1] nonconsensual search of defendant's
blood conducted pursuant to the mandatory-
blood-draw and implied-consent provisions
in Transportation Code violated the Fourth
Amendment, and

[2] statute, providing that evidence may not
be admitted unless evidence was obtained by
officer acting upon a warrant, did not apply
since no warrant was issued.

Affirmed.

West Headnotes (4)

[1]     **Criminal Law**
        Theory and Grounds of Decision
        in Lower Court
        Appellate court must uphold the trial
        court's ruling if it is supported by the
        record and correct under any theory
        of law applicable to the case, and this
        principal holds true even when the
        trial judge gives the wrong reason for
        his decision, and is especially true
        with regard to admission of evidence.

        Cases that cite this headnote

[2]     **Automobiles**
        Right to take sample or conduct
        test; initiating procedure
        **Automobiles**
        Grounds or cause; necessity for
        arrest
        Nonconsensual search of intoxicated
        driving suspect's blood conducted
        pursuant to the mandatory-blood-
        draw and implied-consent provisions
        in the Transportation Code, when
        undertaken in the absence of a
        warrant or any applicable exception
        to the warrant requirement, violated
        the Fourth Amendment; there were
        no exigent circumstances, and
        Transportation Code's mandatory-
        blood-draw was not a valid exception

to the Fourth Amendment. U.S. Const. Amend. 4; Tex. Transp. Code Ann. § 724.012(b).

Cases that cite this headnote

**[3]  Courts**

 In general; retroactive or prospective operation

Supreme Court's holding in McNeely, 133 S.Ct. 1552, that natural metabolization of alcohol in the bloodstream does not present a per se exigency that justifies an exception to the Fourth Amendment's search warrant requirement for nonconsensual blood testing in all drunk-driving cases, applied to case on direct appeal since case was not yet final when McNeely was decided. U.S. Const. Amend. 4.

Cases that cite this headnote

**[4]  Criminal Law**

 Applicability when no warrant sought or yet obtained

Exception to statute excluding unconstitutionally obtained evidence, when the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant, did not apply to case in which no warrant was issued. U.S. Const. Amend. 4; Tex. Crim. Proc. Code Ann. art. 38.23(b).

Cases that cite this headnote

Appeal from the 171st District Court of El Paso County, Texas, (TC # 20120D03021)

**Attorneys and Law Firms**

Jaime E. Esparza, District Attorney, El Paso, TX, for State.

Matthew DeKoatz, Attorney at Law, for Appellee.

Before McClure, C. J., Rivera, and Rodriguez, JJ.

***OPINION***

YVONNE T. RODRIGUEZ, Justice

**\*1**  Vicente Munoz was charged by indictment of Felony driving while intoxicated. The State of Texas appeals the trial court's order granting Vicente Munoz's motion to suppress his blood test result that was obtained as a result of his arrest for DWI. The trial court's findings of fact and conclusions of law reflect the sole basis for suppression of the blood test result was the State's failure to show exigent circumstances to support the warrantless, non-consensual blood draw. Finding the State failed to establish a valid exception to the warrant requirement, we affirm the trial court's suppression order.

**FACTUAL SUMMARY**

On September 5, 2009, about 8:17 p.m., El Paso Police Officer Jordan was on patrol when she was dispatched to a call involving a suspicious vehicle. The reporter had observed a red pickup truck sitting in the street, with the engine off and the headlights on. Officer Jordan arrived at approximately 8:20 p.m. and spoke with the reporter. Officer Jordan approached the truck on the driver's side. The officer discovered Munoz asleep in the front seat with a can of beer between his legs, the keys in the ignition, the engine off, and the headlights on. Officer Jordan woke Munoz up and smelled a strong odor of an alcoholic beverage. When Munoz exited the truck, the officer observed him to have an unsteady balance, red blood-shot eyes, and exhibit slurred speech. Munoz refused to submit to a breath test. Munoz was transported to the station at 9:13 p.m. The station is about five to six blocks away and it takes a couple of minutes from Munoz's vehicle to arrive there.

On the way to the station, Officer Jordan passed the Municipal Court building which houses a magistrate on duty from 9:00 p.m. to 8:00 a.m. every night. Officer Jordan stated that to get a warrant, she would have to go before the magistrate, "get it signed and get the warrant." She acknowledged she did not attempt to get a warrant nor was she prevented from getting one. Officer Jordan testified that she was aware that she could have obtained a warrant had she wanted. Officer Jordan explained to the court that she did not get a warrant because at that time the law allowed a mandatory blood draw if an individual had two prior convictions. She stated the only reason she failed to obtain the warrant was because she relied on the mandatory blood draw statute.

After Munoz was placed in custody, it was determined he had seven prior convictions for DWI. Based on Munoz's prior convictions, he was immediately taken to the hospital for a mandatory blood draw.

## PROCEDURAL BACKGROUND

On December 14, 2012, the trial court, after a hearing on a motion to suppress statements, evidence, and the blood test result, orally denied the motion. On May 2, 2013, Munoz filed a second motion to suppress the blood test result relying on *Missouri v. McNeely,* —— U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). On May 6, 2013, the trial court heard argument of counsel regarding Munoz's second motion to suppress and denied it again. On the day of Munoz's jury trial, May 14, 2013, the trial court heard additional testimony from Officer Jordan and suppressed the blood test result.[1] Munoz argued that no exigent circumstances were shown and a warrantless blood draw could not be permitted under *McNeely.* The State argued *McNeely* did not apply in states which had legislatively-mandated blood draws for repeat offenders such as Texas. Next, the State contended the blood test result should not be excluded because the officers were acting in good-faith reliance upon the law.

[1]  The trial court heard the initial motion to suppress in December 2014. *McNeely* was decided in April 2013, and the trial court's suppression order was rendered a month later.

*2 The trial court entered thirty-six findings of fact and six conclusions of law. The relevant Findings of Fact are as follows:

5. At 8:22 p.m., Detective Jordan arrived at the scene.[2]

...

18. Defendant declined to submit to Standardized Field Sobriety Tests (SFSTs) and the breath test.

...

26. Approximately 10 minutes elapsed from the time Detective arrived at the scene to the time Detective arrested the Defendant.

...

28. At 9:15 p.m., Defendant arrived at the station.

29. At the station, EPPD Officer Art Senclair discovered that the Defendant had at least two prior Driving While Intoxicated convictions.

30. EPPD did not acquire a warrant to draw blood from the Defendant.

31. On September 5, 2009, Detective Jordan could have acquired a warrant for a blood draw, if she wanted to get one on that date.

32. On September 5, 2009, nothing prevented Detective Jordan from acquiring a warrant for a blood draw.

33. There is a magistrate on duty every night from 9:00 p.m. to 6:00 a.m. at the Municipal Court building which was closer to the location where Defendant was arrested than the Police station where Defendant was transported.

34. At 10:25 p.m., Officer Art Senclair followed Texas Transportation Code section 724.012(b)(3)(B), and transported Defendant to Las Palmas hospital for a blood draw.

35. Registered nurse Michael Windham drew Defendant's blood at Las Palmas hospital.

36. The lab result revealed that Defendant's blood alcohol level was 0.23.

The relevant Conclusions of Law are as follows:

1. *Missouri v. McNeely,* 133 S.Ct. 1552 requires exigent circumstances in order to conduct a warrantless blood draw.

...

3. The State did not present any evidence that constituted exigent circumstances.

...

5. Texas Transportation Code, section 724.012(b)(3)(B) allows for a warrantless blood draw on an individual with two or more previous DWI convictions.

6. Pursuant to *McNeely,* this governmental interest does not justify a departure from obtaining a warrant, unless there are exigent circumstances present.

[2]  In 2013, at the time of the hearing, Officer Jordan had been promoted to Detective.

## DISCUSSION

The State in a single point of error raises two sub-issues. First, the State contends that the trial court erred by relying on *Missouri v. McNeely* in suppressing the warrantless blood test result obtained pursuant to the implied-consent and mandatory-blood-draw provisions in the Texas Transportation Code § 724.012(b).[3] *See*TEX.TRANSP.CODE ANN. § 724.012(b)(West 2011). According to the State, *McNeely* decided the narrow issue of whether the dissipation of alcohol constituted a *per se* exigency that allowed for a warrantless blood draw in DWI cases. Therefore, the State concludes *McNeely* is inapplicable here given that the State relied on the Texas Transportation Code for implied consent of a warrantless blood-draw in DWI cases involving an accident or prior convictions. TEX.TRANSP.CODE ANN. §§ 724.011, 724.012(b).

3    TEX.TRANSP.CODE ANN. § 724.012(b) provides:

> (b) a peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle ... and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
>
> ...
>
> (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:
>
> ...
>
> (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04 [misdemeanor DWI]....

**\*3** Second, even if *McNeely* applies, the State posits, the officers acted in objective reasonable reliance upon then-binding precedent and

Section 724.012(b), so therefore, the blood test result are not subject to the Fourth Amendment's exclusionary rule. The State further argues Munoz's 2009 blood test result was not obtained in violation of the law, because the blood draw occurred prior to the issuance of *McNeely* in April 2013. The State asserts that in 2009, the officers acted in "objective reasonable reliance" under existing precedent and Munoz's warrantless blood draw was proper and therefore, not subject to exclusion under the Fourth Amendment.

Munoz responds that under *McNeely,* a warrantless blood draw is reasonable only if it falls within a recognized exception to the Fourth Amendment's warrant requirement. Munoz contends, under these facts, the State has failed to secure a warrant or prove any permissible constitutional exception applies.

## STANDARD OF REVIEW

When reviewing a motion to suppress, we apply a bifurcated standard of review. *See*Crain v. State, 315 S.W.3d 43, 48 (Tex.Crim.App.2010); State v. Terrazas, 406 S.W.3d 689, 692 (Tex.App.–El Paso 2013, no pet.). We afford almost total deference to the trial court's findings of historical fact that are supported by the record, and to mixed questions of law and fact that turn on an assessment of a witnesses' credibility or demeanor. *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex.Crim.App.2010); *Amador v. State,* 221 S.W.3d 666, 673 (Tex.Crim.App.2007); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The trial court's determination of legal questions and its

application of the law to facts that do not turn upon a determination of witness credibility and demeanor are reviewed *de novo. See Valtierra,* 310 S.W.3d at 447; *Amador,* 221 S.W.3d at 673; *Kothe v. State,* 152 S.W.3d 54, 62–63 (Tex.Crim.App.2004); *Guzman,* 955 S.W.2d at 89.

[1] When, as here, the trial judge makes express findings of fact, we must first determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Valtierra,* 310 S.W.3d at 447; *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App.2006). We review a trial court's legal ruling *de novo. State v. Iduarte,* 268 S.W.3d 544, 548–49 (Tex.Crim.App.2008). Furthermore, we must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. White,* 306 S.W.3d 753, 757 n. 10 (Tex.Crim.App.2010). "This principal holds true even when the trial judge gives the wrong reason for his decision, and is especially true with regard to admission of evidence." *State v. Esparza,* 353 S.W.3d 276, 282 (Tex.App.–El Paso 2011, pet. granted), *aff'd State v. Esparza,* 413 S.W.3d 81 (Tex.Crim.App.2013), *quoting Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). "The evident purpose of this rule is to ensure that a trial court ruling will be upheld if the appellate court has assurance that the ruling was just and lawful." *Esparza,* 353 S.W.3d at 282, *quoting White,* 306 S.W.3d at 757 n. 10.

## SUPPRESSION OF BLOOD TEST RESULT

In *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that an involuntary blood draw is permissible under a Fourth Amendment analysis. Initially, the Court noted that the taking of a blood specimen from a person is a search and seizure under the Fourth Amendment. *Id.* at 767, 86 S.Ct. at 1834. The Court outlined "special facts" under which an involuntary blood draw is reasonable. *Id.* at 770–771, 86 S.Ct. at 1835–36. The Court's analysis concluded that, in light of the potential for the destruction of alcohol evidence in a person's body, and involuntary blood draw is permitted under the Fourth Amendment where there is a delay by law enforcement in investigating an accident; and there is no time to apply for a warrant and locate a magistrate. *Id.*

*4 In *Missouri v. McNeely,* the Court expounded further, explicitly stating that a warrantless blood draw must fall under one of the recognized exceptions to the Fourth Amendment. 133 S.Ct. at 1558. The Court held that the dissipation of alcohol from the body *per se* is insufficient to create an exigent circumstance to justify a warrantless seizure of a defendant's blood. *McNeely,* 133 S.Ct. at 1560–61. The Court instructed us that whether the exigent circumstances exception is satisfied must be viewed case by case in light of the totality of the circumstances. *Id.*

The Texas Court of Criminal Appeals finally addressed the tension between our statutory implied consent, Texas Transportation Code section 724.012(b)(3)(B) and *McNeely* in *State v. Villarreal.*[4] *State v. Villarreal,* No. PD–0306–14, —— S.W.3d ——, ——, 2014 WL

6734178, at *1 (Tex.Crim.App. Nov. 26, 2014)(reh'g granted). In *Villarreal,* the facts are almost identical to the case at hand.

4     We note the Texas Court of Criminal Appeals has granted the State's motion for rehearing in this case on February 25, 2015, but has not withdrawn its opinion on original submission. While *Villarreal's* future precedential value is not certain, we believe the opinion is persuasive and absent any other guidance from the Texas Court of Criminal Appeals, we will continue to apply its reasoning. *See Perez v. State,* No. 01–12–01001–CR, —— S.W.2d ——, ——, 2015 WL 1245469, at *6 (Tex.App.–Houston [1st Dist.] Mar. 17, 2015, pet. filed) (applying the *Villarreal* holding after the Texas Court of Criminal Appeals granted rehearing).

In 2012, Villarreal was stopped for a traffic violation and observed to be swaying back and forth, had red, watery eyes, and slurred speech, in addition to a strong odor of alcohol. *Id.* Villarreal was placed under arrest for DWI. *Id.* After the discovery of Villarreal's several previous convictions of DWI, the officer took Villarreal to a hospital for a blood draw. *Id.,* at ——, 2014 WL 6734178, at *2. Villarreal's blood test result indicated "a blood-alcohol concentration of. 16 grams of alcohol per hundred milliliters of blood." *Id.* Due to Villarreal's prior convictions, he was subsequently indicted for a felony DWI. *Id.*

At the evidentiary hearing on Villarreal's motion to suppress, the State's sole witness testified he "could have" obtained a warrant but did not and relied on "the mandatory-blooddraw provision in the Code."*Id.*; TEX. TRANSP. CODE ANN. § 724.012(b). Further, the officer stated his decision to conduct the blood draw was based only on the statutory authority and not on any emergency or exigent circumstances. *Villarreal,* —— S.W.3d at ——, 2014 WL 6734178, at *2. The parties stipulated Villarreal's blood draw was taken without his

consent or a warrant. *Id.* Villarreal argued *McNeely* applied and thus the blood draw was unconstitutional. *Id.* The State contended that *McNeely* did not apply to mandatory blood draws because of our implied consent statutes. *Id.*

The Court, after extensive analysis, held "that a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment." *Id.,* at ——, 2014 WL 6734178, at *21. Our sister courts in applying *Villarreal* have joined the Texas Court of Criminal Appeals in soundly rejecting the State's argument that *McNeely* has limited applicability when construed in conjunction with the Texas Transportation Code § 724.012(b)(3)(B). *SeeState v. Tercero,* —— S.W.3d——, No. 01–14–00120–CR, 2015 WL 1544519 (Tex.App.–Houston [1st Dist] April 2, 2015, pet. filed); *Chidyausiku v. State,* 457 S.W.3d 627 (Tex.App.–Fort Worth 2015, pet. filed); *State v. Garcia,* 457 S.W.3d 546 (Tex.App.–San Antonio 2015, pet. filed); *Lloyd v. State,* 453 S.W.3d 544 (Tex.App.–Dallas 2014, pet. ref d); *Cole v. State,* 454 S.W.3d 89 (Tex.App.–Texarkana 2014, pet. granted); *Clement v. State,* 461 S.W.3d 274 (Tex.App.–Eastland 2015, pet. filed); *State v. Martinez,* No. 13–14–00117–CR, 2015 WL 1957087 (Tex.App.–Corpus Christi April 30, 2015, no pet. h.)(mem. op., not designated for publication); *Evans v. State,* No. 14–13–00642–CR, 2015 WL 545702 (Tex.App.–Houston [14th Dist.] Feb. 10, 2015, pet. filed) (mem. op., not designated for publication).

**\*5** **[2]** Likewise, our previous approach has followed *Villarreal. SeeBurcie v. State,* No. 08–13–00212–CR, 2015 WL 2342876 (Tex.App.–El Paso May 14, 2015, pet. filed)(not designated for publication). In *Burcie,* like the case before us, the facts were not in dispute and the State had failed to raise any recognizable exception to the Fourth Amendment. The record here shows the officer relied on the implied consent under the Texas Transportation Code and could have obtained a warrant but chose not to. Like *Villarreal* and *Burcie,* the State relies on the implied consent and mandatory-blood-draw provisions of the Texas Transportation Code to support the admission of the blood test result. The trial court concluded as a matter of law the State failed to present "any evidence that constituted exigent circumstances." The record supports that conclusion. Given that the Texas Transportation Code's mandatory-blood-draw is not a valid exception to the Fourth Amendment, the trial court did not err in suppressing the blood test result.

We find under *Missouri v. McNeely* and *State v. Villarreal* the State's first sub-issue is overruled.

## GOOD–FAITH RELIANCE

The State, in their second sub-issue, urges us to find the trial court erred because in 2009 the blood draw was not obtained in violation of federal Fourth Amendment exclusionary rule nor Texas' exclusionary rule found in Article 38.23 of the Texas Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 38.23

(West 2005). That statute provides evidence may not be used or admitted in the criminal trial against the defendant if the evidence is obtained by "an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America[.]" TEX.CODE CRIM. PROC. ANN. art. 38.23(a). Moreover, the State contends, in 2009, at the time of Munoz's blood draw, the officers acted in objective reasonable reliance of the existing law.

First, the State argues that Munoz's blood test was not obtained in contravention of then existing federal precedent and therefore, even if *McNeely* applies, the blood test should not be excluded. The State cites *Davis v. United States,* for the proposition that the "exclusionary rule is limited to situations in which deterrence is 'thought most efficaciously served.' " *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 2426, 180 L.Ed.2d 285 (2011), *citingU.S. v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). As the State correctly points out, *Davis* made clear a constitutional violation does not always mandate the applicability of exclusionary rule. The *Davis* court explained the exclusionary rule never applies to the suppression of evidence when it was obtained "as a result of nonculpable, innocent police conduct." 131 S.Ct. at 2429. The State also pointed to the holdings in *Krull, Leon,* and *Peltier* to illustrate that the United States Supreme Court has prohibited the application of the Fourth Amendment's exclusionary rule when an officer has in good-faith, objectively and reasonably relied on a then constitutional statute or valid search warrant. *Illinois v. Krull,*

480 U.S. 340, 347, 350, 107 S.Ct. 1160, 1165–66, 94 L.Ed.2d 364 (1987); *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984); *United States v. Peltier,* 422 U.S. 531, 537, 95 S.Ct. 2313, 2317–18, 45 L.Ed.2d 374 (1975).

Relying on *Swink v. State* and *Elias v. State,* the State contends that *McNeely* should not be applied retroactively. *Swink v. State,* 617 S.W.2d 203, 209–210 (Tex.Crim.App.1981)(*overruled on other grounds byGriffin v. State,* 765 S.W.2d 422 (Tex.Crim.App.1989)); *State v. Elias,* No. 08–08–00085–CR, 2012 WL 4392245, at *7 (Tex.App.–El Paso Sept. 26, 2012, pet. ref'd) (not designated for publication). In *Swink,* the Texas Court of Criminal Appeals held "that the warrantless search and seizure of the premises by the officers was permissible at the time of their actions and that the holding of Mincey will not be applied retroactively to this case." *Swink,* 617 S.W.2d at 210. The Court explained the "search was conducted some six months before the decision in Mincey while the trial was held six months after the decision.... Thus, at the time officers conducted the warrantless search of the murder scene, their actions did not run afoul of the holding in Mincey." *Id.* at 209. *SeeMincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

**\*6** In *Elias,* relying on *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), we held that "the search of Elias's van was unconstitutional under *Gant,* [however] the police conducted the search in 2007 in good faith reliance on appellate precedent authorizing the search incident to arrest. Accordingly, we conclude that the exclusionary rule does not apply in this case." *Elias,* 2012 WL 4392245, at *7. *SeeArizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Thus, *Swink* refused to apply *Mincey* retroactively. *Swink,* 617 S.W.2d at 210. Likewise, *Elias* did not apply *Gant* retroactively, relying on the federal doctrine of the officers' good faith reliance under *Davis. Elias,* 2012 WL 4392245, at *7. Neither case alludes to or discusses the Texas exclusionary rule under Article 38.23 and its application to an officer's good faith reliance on then-constitutional statutes and former binding precedent. TEX.CODE CRIM. PROC. ANN.ODE CRIM. PROC. ANN. art. 38.23. We note that *Swink* and *Elias* are specifically limited to the application of *Mincey* and *Gant.*Our research has failed to uncover any Texas case, under these facts, declining to retroactively apply *McNeely* and the State has not cited to any.

[3] The United States Supreme Court in *Griffith* explained that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Griffith v. Kentucky,* 479 U.S. 314, 322, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987). The *Griffith* Court held that a newly announced constitutional rule for conducting criminal prosecutions must be applied retroactively to all cases, state or federal, pending on direct review or not yet final when the rule was announced regardless whether they constitute a clear break from the past. *Griffith,* 479 U.S. at 328, 107 S.Ct. at 716. *SeeMcClintock v. State,* 444 S.W.3d 15 (Tex.Crim.App.2014). The Supreme Court's retroactivity analysis for federal constitutional errors is binding upon the states when federal

constitutional errors are involved. *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 535, 111 S.Ct. 2439, 2443, 115 L.Ed.2d 481 (1991). This case was not yet final when *McNeely* was decided in April 2013 and it applies here on direct appeal.

The court in *Douds v. State,* held the good-faith reliance exception does not apply in Texas. *Douds v. State,* 434 S.W.3d 842, 861 (Tex.App.–Houston [14th Dist.] 2014, pet. granted)(en banc). The Texas Supreme Court has resisted efforts to expand the good-faith exception using federal precedent, especially in those instances when the federal exceptions conflict with our statutory exclusionary rule. *Howard v. State,* 617 S.W.2d 191, 193 (Tex.Crim.App.1979)(op. on reh'g) (rejecting the federal good-faith doctrine of *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)); *also seeState v. Daugherty,* 931 S.W.2d 268 (Tex.Crim.App.1996). Other Texas Courts of Appeals have come to that same conclusion, specifically when evaluating the admissibility of blood test results under *McNeely. Douds,* 434 S.W.3d at 862; *see alsoState v. Anderson,* 445 S.W.3d 895, 912 (Tex.App.–Beaumont 2014, no pet.); *Tercero,* —— S.W.3d at ——, 2015 WL 1544519, at *6. We decline the State's invitation to create a good-faith reliance exception to the application of *McNeely.*

[4] Lastly we consider whether Texas's exclusionary rule as codified in the Code of Criminal Procedure article 38.23 allows for the admission of the blood test result. The exception to Texas's exclusionary rule is legislative and found in Article 38.23(b) which only applies when a warrant issued by a neutral magistrate, based on probable cause, and is relied upon by the officer in good-faith. TEX.CODE CRIM. PROC. ANN. art. 38.23(b). As a result of the lack of a warrant being issued, the statutory exception in Article 38.23(b) does not apply here. *Douds,* 434 S.W.3d at 861; *Anderson,* 445 S.W.3d at 912; *Tercero,* —— S.W.3d at —— - ——, 2015 WL 1544519, at *6–7; *Burks v. State,* 454 S.W.3d 705, 709 (Tex.App.–Fort Worth 2015, pet. filed); *Martinez v. State,* No. 04–13–00764–CR, 2014 WL 5837162, at *2 (Tex.App.–San Antonio Nov. 12, 2014, pet. filed)(mem. op., not designated for publication); *Weems v. State,* 434 S.W.3d 655, 666 (Tex.App.–San Antonio 2014, pet. granted); *State v. Stewart,* No. 09–13–00421–CR, 2014 WL 5855905, at *4 (Tex.App.–Beaumont Nov. 12, 2014, pet. ref'd)(mem. op., not designated for publication).

\*7 We overrule the State's second sub-issue.

## CONCLUSION

We conclude the trial court did not abuse her discretion in determining there were no exigent circumstances that justified a warrantless blood draw from Munoz. We affirm the trial court's order granting the motion to suppress.

Rivera, J., Not Participating

**All Citations**

--- S.W.3d ----, 2015 WL 4719559

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX B



FILE COPY

SHARON KELLER
  PRESIDING JUDGE

LAWRENCE E. MEYERS
CHERYL JOHNSON
MIKE KEASLER
BARBARA P. HERVEY
ELSA ALCALA
BERT RICHARDSON
KEVIN P. YEARY
DAVID NEWELL
  JUDGES

# COURT OF CRIMINAL APPEALS
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

ABEL ACOSTA
CLERK
(512) 463-1551

SIAN SCHILHAB
GENERAL COUNSEL
(512) 463-1597

Wednesday, February 25, 2015

Jacqueline Rae
Assistant District Attorney
901 Leopard, Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

District Attorney Nueces County
Mark Skurka
901 Leopard  Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Fred Jimenez
ATTORNEY AT LAW
509 Lawrence St., Suite 301
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Douglas K. Norman
Assistant District Attorney
901 Leopard, Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

**Re:** STATE OF TEXAS VS. DAVID VILLARREAL
**CCA No.** PD-0306-14
**Trial Court Case No.** 12-CR-1000-H

Dear Counselors:

The Court has this day granted the State's motion for rehearing.

The case will be submitted to the Court on Wednesday, March 18, 2015.

Sincerely,

Abel Acosta, Clerk

PD-0306-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/17/2014 2:52:50 PM
Accepted 12/18/2014 8:54:31 AM
ABEL ACOSTA
CLERK

NO. PD-0306-14
(Appellate Court Cause No. 13-13-253-CR)

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE |
| Petitioner, | § | |
| | § | |
| V. | § | COURT OF CRIMINAL APPEALS |
| | § | |
| DAVID VILLARREAL, | § | |
| Respondent. | § | OF TEXAS |

## PETITIONER'S AMENDED MOTION FOR REHEARING

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through the District Attorney for the 105th Judicial District of Texas, and submits this amended motion for rehearing, pursuant to Tex. R. App. P. 79.1 & 79.3, and requests that the Court reconsider its November 26, 2014, opinion in this case, grant this motion, and resubmit this case.

For the reasons set forth in the State's briefs, as well as those set forth in the dissenting opinions, the State believes that rehearing and reconsideration are appropriate in the present case.

### I. WAIVER.

Specifically, the State contends that the majority opinion too quickly dismissed the State's argument that Texas drivers have validly waived their right to object to a warrantless blood draw under the limited circumstances set out in the implied consent / mandatory draw statute.

I

This Court's majority opinion stated, "we are aware of no Supreme Court cases approving of [the waiver] doctrine's applicability in a context similar to the one with which we are confronted today," distinguishing the present case from Supreme Court waiver cases based on federal regulations. (Slip. Op. at 25) Yet, the majority opinion made no persuasive argument why waiver in the context of state regulation of a highly regulated activity like driving should be treated differently from the federally regulated activities in *Zap* and *Biswell*.

In *Zap*, the Supreme Court relied upon both federal statutory authority and a government contract with the defendant to establish a waiver of that defendant's right to insist on a warrant before his records could be inspected by government officials with whom he chose to do business as a Navy contractor. *See Zap v. United States*, 328 U.S. 624, 626-27, 66 S. Ct. 1277 (1946), *vacated on other grounds*, 330 U.S. 800 (1947).

In *Biswell*, the Supreme Court relied upon statutory authority for the warrantless inspection of a gun dealer's records, firearms and ammunition. *See United States v. Biswell*, 406 U.S. 311, 316, 92 S. Ct. 1593 (1972).

In the present case, the mere fact that the state, and not the federal government, regulates driving offers no principled reason for disallowing waiver. Nor should it matter that driving is engaged in for both personal and

2

business reasons. Moreover, a Texas driver is clearly on notice of the waiver in question. In addition to the statute and presumed knowledge of the law, the Texas Driver's Handbook clearly puts present and prospective drivers on notice of the implied consent law. See Texas Driver's Handbook, p. 60 (rev. July 2012).

Finally, this Court should not reject the waiver exception simply because it has never before been applied to the particular circumstances in the present case. Waiver remains a "well recognized exception" to the warrant requirement, even though waiver of the specific right of an impaired driver to object to a warrantless blood draw may not be a "well recognized application" of that exception.

## II. SPECIAL NEEDS.

Alternatively, with regard to "special needs," the majority opinion too quickly dismissed that exception on the ground that the primary purpose of such a blood draw was supposedly to collect evidence for a criminal trial. In doing so, the Court neglected the equally valid and compelling purpose of revoking the driving privilege of those who have shown themselves to be too irresponsible to continue to hold that privilege.

Under the mandatory draw provisions of the Texas Transportation Code, in addition to providing evidence for a criminal prosecution, the results

3

of the blood draw may be used in the administrative removal of drunken drivers from the public roadways. The Department of Public Safety must suspend the person's license if analysis of the blood reveals an alcohol concentration of 0.08 or greater. Tex. Transp. Code § 524.012(b)(1); Tex. Penal Code § 49.01(2)(B). The suspension is for a period of 90 days or one year, depending on whether the person has had any prior DWI arrests in the ten years preceding the current date of arrest. Tex. Transp. Code § 524.022(a).

This Court has noted that the "primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but is to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Ex parte Tharpe*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996); *see also Tex. Dept. Pub. Safety v. Richardson*, 384 S.W.2d 128, 132 (1964) ("But, it should be made abundantly clear that in this case [of driver's license revocation] we are not concerned with criminal penalties but rather with an administrative and regulative power vested in the Texas Department of Public Safety which power has for its purpose the protection of the lives and property of those using the highways.").

Accordingly, the mandatory draw statute may be justified under the special needs exception, as applied to the closely regulated

4

activity of driving on public roads, and as a tool not only of criminal enforcement but also for administrative measures designed to protect the public from drunk drivers by removing their driving privileges.

## III. GENERAL FOURTH AMENDMENT REASONABLENESS.

In addition, both Presiding Judge Keller's Dissenting Opinion, and Judge Meyers' Dissenting Opinion appear to rely on a generalized reasonableness approach that looks to the totality of the circumstances, the needs of the public and law enforcement, and the lowered expectation of privacy that repeat offenders have in the minor inconvenience of a compelled blood draw. The State suggests that these considerations are entitled to more weight than was given to them in the majority opinion.

## IV. MISTAKE OF LAW.

Finally, the State believes that the very recent opinion by the United States Supreme Court in *Heien v. North Carolina*, — U.S. —, No. 13-604 (December 15, 2014), should be considered by this Court on rehearing.

In *Heien*, the Supreme Court, arguably for the first time, recognized that an officer's reasonable mistake of law, like a reasonable mistake of fact, may render legal conduct that would otherwise amount to a Fourth Amendment violation. Specifically, in *Heien*, the Court held that it was "objectively reasonable for an officer in Sergeant Darisse's position to think that Heien's

5

faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop." Slip op. at 13.

On a broader level, the Supreme Court reasoned that, "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" Slip op. at 5 (quoting *Brinegar* v. *United States*, 338 U. S. 160, 176 (1949)).

In the present case, Officer Williams clearly relied on what he reasonably believed to be a valid statutory mandate for him to require the blood draw in question. To that extent that he reasonably relied upon the implied consent / mandatory draw statute, he, like Sergeant Darisse, did not violate the Fourth Amendment by conduct that would later be shown to be a mistake of law.

Since this Court did not have the benefit of the *Heien* opinion at the time it handed down its November 26th opinion, the State believes that rehearing and reconsideration would be especially appropriate.

**PRAYER**

For the foregoing reasons, the State requests that the Court reconsider its November 26, 2014, opinion in this case; grant this motion for rehearing; resubmit this case in order to address the State's contentions as set out in this motion; and, after doing so, reverse the judgment of the Thirteenth Court of Appeals and vacate the trial court's suppression order.

Respectfully submitted,

/s/ *Douglas K. Norman*

Douglas K. Norman
State Bar No. 15078900

/s/ *Jacqueline Lamerson*

Jacqueline Lamerson
State Bar No. 24074923
Assistant District Attorneys
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)

**RULE 9.4 (i) CERTIFICATION**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this motion, excluding those matters listed in Rule 9.4(i)(1), is 1,271.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman


**CERTIFICATE OF SERVICE**

This is to certify that, pursuant to Tex. R. App. P. 6.3 (a), copies of this motion were e-mailed on December 17, 2014, to Respondent's attorney, Mr. Fred Jimenez, and to the State Prosecuting Attorney.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman

PD-0306-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/10/2014 9:25:07 AM
Accepted 12/10/2014 9:35:22 AM
ABEL ACOSTA
CLERK

NO. PD-0306-14
(Appellate Court Cause No. 13-13-253-CR)

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE |
| Petitioner, | § | |
| | § | |
| V. | § | COURT OF CRIMINAL APPEALS |
| | § | |
| DAVID VILLARREAL, | § | |
| Respondent. | § | OF TEXAS |

## PETITIONER'S MOTION FOR REHEARING

TO THE HONORABLE COURT OF APPEALS:

Comes now the State of Texas, by and through the District Attorney for the 105th Judicial District of Texas, and submits this motion for rehearing, pursuant to Tex. R. App. P. 79.1, and requests that the Court reconsider its November 26, 2014, opinion in this case, grant this motion, and resubmit this case.

For the reasons set forth in the State's briefs, as well as those set forth in the dissenting opinions, the State believes that rehearing and reconsideration are appropriate in the present case.

### I. WAIVER.

Specifically, the State contends that the majority opinion too quickly dismissed the State's argument that Texas drivers have validly waived their right to object to a warrantless blood draw under the limited circumstances set out in the implied consent / mandatory draw statute.

1

This Court's majority opinion stated, "we are aware of no Supreme Court cases approving of [the waiver] doctrine's applicability in a context similar to the one with which we are confronted today," distinguishing the present case from Supreme Court waiver cases based on federal regulations. (Slip. Op. at 25) Yet, the majority opinion made no persuasive argument why waiver in the context of state regulation of a highly regulated activity like driving should be treated differently from the federally regulated activities in *Zap* and *Biswell*.

In *Zap*, the Supreme Court relied upon both federal statutory authority and a government contract with the defendant to establish a waiver of that defendant's right to insist on a warrant before his records could be inspected by government officials with whom he chose to do business as a Navy contractor. *See Zap v. United States*, 328 U.S. 624, 626-27, 66 S. Ct. 1277 (1946), *vacated on other grounds,* 330 U.S. 800 (1947).

In *Biswell*, the Supreme Court relied upon statutory authority for the warrantless inspection of a gun dealer's records, firearms and ammunition. *See United States v. Biswell*, 406 U.S. 311, 316, 92 S. Ct. 1593 (1972).

In the present case, the mere fact that the state, and not the federal government, regulates driving offers no principled reason for disallowing waiver. Nor should it matter that driving is engaged in for both personal and

business reasons. Moreover, a Texas driver is clearly on notice of the waiver in question. In addition to the statute and presumed knowledge of the law, the Texas Driver's Handbook clearly puts present and prospective drivers on notice of the implied consent law. See Texas Driver's Handbook, p. 60 (rev. July 2012).

Finally, this Court should not reject the waiver exception simply because it has never before been applied to the particular circumstances in the present case. Waiver remains a "well recognized exception" to the warrant requirement, even though waiver of the specific right of an impaired driver to object to a warrantless blood draw may not be a "well recognized application" of that exception.

## II. SPECIAL NEEDS.

Alternatively, with regard to "special needs," the majority opinion too quickly dismissed that exception on the ground that the primary purpose of such a blood draw was supposedly to collect evidence for a criminal trial. In doing so, the Court neglected the equally valid and compelling purpose of revoking the driving privilege of those who have shown themselves to be too irresponsible to continue to hold that privilege.

Under the mandatory draw provisions of the Texas Transportation Code, in addition to providing evidence for a criminal prosecution, the results

of the blood draw may be used in the administrative removal of drunken drivers from the public roadways. The Department of Public Safety must suspend the person's license if analysis of the blood reveals an alcohol concentration of 0.08 or greater. TEX. TRANSP. CODE § 524.012(b)(1); TEX. PENAL CODE § 49.01(2)(B). The suspension is for a period of 90 days or one year, depending on whether the person has had any prior DWI arrests in the ten years preceding the current date of arrest. TEX. TRANSP. CODE § 524.022(a).

This Court has noted that the "primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but is to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Ex parte Tharpe*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996); *see also Tex. Dept. Pub. Safety v. Richardson*, 384 S.W.2d 128, 132 (1964) ("But, it should be made abundantly clear that in this case [of driver's license revocation] we are not concerned with criminal penalties but rather with an administrative and regulative power vested in the Texas Department of Public Safety which power has for its purpose the protection of the lives and property of those using the highways.").

Accordingly, the mandatory draw statute may be justified under the special needs exception, as applied to the closely regulated

activity of driving on public roads, and as a tool not only of criminal enforcement but also for administrative measures designed to protect the public from drunk drivers by removing their driving privileges.

## III. GENERAL FOURTH AMENDMENT REASONABLENESS.

Finally, both Presiding Judge Keller's Dissenting Opinion, and Judge Meyers' Dissenting Opinion appear to rely on a generalized reasonableness approach that looks to the totality of the circumstances, the needs of the public and law enforcement, and the lowered expectation of privacy that repeat offenders have in the minor inconvenience of a compelled blood draw. The State suggests that these considerations are entitled to more weight than was given to them in the majority opinion.

## PRAYER

For the foregoing reasons, the State requests that the Court reconsider its November 26, 2014, opinion in this case; grant this motion for rehearing; resubmit this case in order to address the State's contentions as set out in this motion; and, after doing so, reverse the judgment of the Thirteenth Court of Appeals and vacate the trial court's suppression order.

Respectfully submitted,

/s/ *Douglas K. Norman*

Douglas K. Norman
State Bar No. 15078900

/s/ *Jacqueline Rae*

Jacqueline Lamerson
State Bar No. 24074923
Assistant District Attorneys
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this motion, excluding those matters listed in Rule 9.4(i)(1), is 972.

/s/ *Douglas K. Norman*

_____

Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to Tex. R. App. P. 6.3 (a), copies of this motion were e-mailed on December 10, 2014, to Respondent's attorney, Mr. Fred Jimenez, and to the State Prosecuting Attorney.

/s/ *Douglas K. Norman*

_____

Douglas K. Norman

7